1
2
3
4
5
6
7
8
9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

10
11
12
13
14
15

JASON ALAN SMITH,

Plaintiff,

v.

BREMERTON POLICE
DEPARTMENT, *et al.*,

Defendants.

CASE NO. 3:19-cv-05479-BHS

REPORT AND
RECOMMENDATION

**NOTING DATE:** August 30, 2019

16
17
18
19
20
21
22
23
24

This matter is before the Court on plaintiff's application to proceed *in forma pauperis*
("IFP") and proposed amended complaint. *See* Dkts. 1, 5. Pursuant to Amended General Order
02-19, the District Court has referred plaintiff's application to the undersigned.

Plaintiff, who states that he has a prosthetic hip, scoliosis, and anxiety, alleges that two
police officers discriminated against him because of his disability during a 40-minute
investigation in a parking lot where defendant and his girlfriend were making repairs to her car.
He further claims that officers retaliated against him by damaging his personal property after he
tried to file an official report with the Bremerton Police Department.

At this early stage and solely for the purpose of making a recommendation on plaintiff's IFP motion, the Court finds that plaintiff has adequately alleged a Fourth Amendment claim against defendant D. Ejde and recommends that plaintiff's IFP motion be granted. However, for the reasons discussed below, the undersigned recommends dismissing all of plaintiff's remaining claims, including his other claims against defendant Ejde, without prejudice, for failure to state a claim upon which relief can be granted.

## BACKGROUND

Plaintiff instituted this action under 42 U.S.C. § 1983 in May 2019 by filing an IFP application and proposed complaint. *See* Dkt. 1. This Court dismissed plaintiff's proposed complaint on June 10, 2019, with leave to amend by July 5, 2019, for failure to state a claim upon which relief may be granted. *See* Dkt. 3. Plaintiff filed an amended proposed complaint on July 8, 2019, listing Bremerton Police Department, "D Ejde," Sergeant Garrity, and Kitsap County as defendants. *See* Dkt. 5, at 2–3.

Plaintiff's claims stem from an interaction with two police officers in the parking lot of a Bremerton business on November 23, 2018. Dkt. 5, at 5, 7. In the amended proposed complaint, plaintiff alleges violations of his First and Fourth Amendment rights, Title II of the Americans with Disabilities Act ("ADA"), § 504 of the Rehabilitation Act of 1973 ("RA"), the Civil Rights Act of 1964 (42 U.S.C. § 2000d), 34 U.S.C. § 10228, 34 U.S.C. § 12601, 18 U.S.C. §§ 241 and 242, 28 U.S.C. § 1983, and footnote 16 from *Terry v. Ohio*, 392 U.S. 1, 19 (1968). *See* Dkt. 5, at 2–3. His stated claims are illegal detention; retaliatory damage to his vehicle; grave mental anguish, pain, and suffering; and various injuries, such as "loss of capacity for the enjoyment of life, embarrassment, humiliation, loss of reputation, lost employment opportunities, lost wages,

and loss of other emol[u]ments." Dkt. 5, at 5. He seeks both monetary relief and to compel the dismissal of the "errant officers." *Id*.

Plaintiff alleges that defendant Ejde illegally detained him and then retaliated against him by damaging his vehicle—on two separate occasions—after he tried to report the alleged illegal detention to defendant Ejde's superiors at the Bremerton Police Department. *See* Dkt. 5, at 5, 8–11. He claims that he and his girlfriend were replacing her car's broken taillight when defendant Ejde walked over and asked if they'd seen "an old, drunk guy." Dkt. 5, at 7. He alleges that when he and his girlfriend replied that they had not seen such a person, the officer walked away but returned a short time later, this time under false pretenses. Dkt. 5, at 7, 10. During this encounter, defendant Ejde allegedly accused plaintiff of stealing a tool from the business and dropping a pill bottle inside the business. Dkt. 5, at 7–8. He took plaintiff's driver's license and asked to search plaintiff and his car, but plaintiff declined. Dkt. 5, at 7.

Plaintiff also alleges that his girlfriend tried to record the encounter with her cell phone but that defendant Garrity, who was apparently also present, "interfered." Dkt. 5, at 10. Plaintiff claims that defendant Ejde used "excessive force" by grabbing plaintiff by the arm and leading him away to speak privately. Dkt. 5, at 7–9. Plaintiff, who claims that he has a prosthetic hip, scoliosis, and anxiety, alleges that although he "did walk willingly," he was "hurt" and "struggled to keep up" with defendant Ejde. Dkt. 5, at 8–9.

Plaintiff alleges that he was released after over 40 minutes, without receiving a citation, and that shortly afterward, he called 911 about defendant Ejde's actions. Dkt. 5, at 10. However, he spoke to defendant Garrity, who did not believe that plaintiff had a worthy complaint. Dkt. 5, at 11. A week after he called 911, plaintiff alleges that his car door was vandalized and his registration tabs were defaced. Dkt. 5, at 11. Again attempting to lodge a complaint with the

1    department, plaintiff claims that he met with other police officers and told them that he suspected

2    defendant Ejde had vandalized his car in order to create an opportunity for a "Terry Stop.[1]" Dkt.

3    5, at 11.  Plaintiff states, "[n]o *Terry* stop occurred, so [I] think that [a third police officer] was

4    privy to illegal police plans against me."  Dkt. 5, at 11. Sometime afterward, plaintiff claims that

5    someone removed a brake caliper bolt from his right front wheel "for a similar reason." Dtk. 5, at

6    11. Finally, plaintiff alleges that he complained once more to law enforcement—and also

7    reached out to the FBI and DOJ for the civil rights violations. Dkt. 5, at 12.

## DISCUSSION

### I.  Legal Principles

10    "The court shall review, before docketing, if feasible or, in any event, as soon as

11    practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a

12    governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A(a).

13    "On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of

14    the complaint, if the complaint – (1) is frivolous, malicious, or fails to state a claim upon which

15    relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such

16    relief." 28 U.S.C. § 1915A(b).

17    As plaintiff seeks to proceed IFP, his complaint is subject to *sua sponte* dismissal at any

18    time for failure to state a claim upon which relief can be granted. *See* 28 U.S.C. § 1915(e)(2).

19    Because plaintiff is *pro se*, the Court will afford him the opportunity to amend his proposed

20    complaint unless it is clear that no amendment could save the complaint. *See Jackson v. Carey*,

21    353 F.3d 750, 758 (9th Cir. 2003). Although this Court will interpret a *pro se* plaintiff's civil

22    rights complaint liberally, "a liberal interpretation . . . may not supply essential elements of the

23

24    _____
     [1] *See Terry*, 392 U.S. 1.

1    claim that were not initially pled." *Ivey v. Board of Regents of Univ. of Alaska*, 673 F.2d 266,

2    268 (9th Cir. 1982).

3    **II.  Timeliness and IFP Status**

4    When a plaintiff is proceeding *pro se*, this Court must "afford the [plaintiff] the benefit of

5    any doubt." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (quoting *Bretz v. Kelman,* 773

6    F.2d 1026, 1027 n.1 (9th Cir. 1985) (en banc)). Here, the Court will consider plaintiff's amended

7    proposed complaint even though it was not timely filed, apparently due to a courthouse closure.

8    Dkt. 4-1.

9    The Court has discretion to decide whether to grant IFP status. *See Calif. Men's Colony v.*

10    *Rowland*, 939 F.2d 854, 858 (9th Cir. 1991). A litigant must show that he "cannot because of his

11    poverty pay or give security for the costs and still be able to provide himself and dependents with

12    the necessities of life." *Adkins v. E.I. DuPont de Nemours & Co*., 335 U.S. 331, 339 (1948).

13    Plaintiff's declaration and application to proceed IFP indicate that he is unable to afford

14    the court's filing fee. Dkt. 1. Accordingly, the Court recommends that plaintiff's application to

15    proceed IFP be granted.

16    **III.  Section 1983 Claims**

17    Plaintiff alleges violations of his First and Fourth Amendment rights under § 1983. *See*

18    Dkt. 5, at 3.

19    *A.  Legal Principles*

20    Section 1983 claims may be brought against defendants in their official or personal

21    capacities. *Hafer v. Melo*, 502 U.S. 21, 27 (1991). If a plaintiff brings a claim against a defendant

22    in that person's "official capacity," the real party in interest is the governmental entity and not

23    the named official. *Id*.

24

1        In contrast, if a plaintiff brings a claim against a defendant in that person's "personal

2   capacity," the plaintiff is "seek[ing] to impose individual liability upon a government officer for

3   actions taken under color of state law." *Id*. at 25. The Eleventh Amendment bars damages actions

4   against state officials in their official capacities. *See Flint v. Dennison*, 488 F.3d 816, 824–25

5   (9th Cir. 2007). "[W]hen a plaintiff sues a defendant for damages, there is a presumption that he

6   is seeking damages against the defendant in his personal capacity." *Mitchell v. Washington*, 818

7   F.3d 436, 442 (9th Cir. 2016) (citing *Romano v. Bible*, 169 F.3d 1182, 1186 (9th Cir. 1999)).

8        In order to state a claim for relief under 42 U.S.C. § 1983, a plaintiff must show the

9   following: (1) he suffered a violation of rights protected by the Constitution or created by federal

10  statute, and (2) the violation was proximately caused by a person acting under color of state law.

11  *See Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). A plaintiff must allege facts

12  showing how individually named defendants caused, or personally participated in causing, the

13  harm alleged in the complaint. *See Arnold v. IBM*, 637 F.2d 1350, 1355 (9th Cir. 1981). The

14  inquiry into causation must be individualized and focus on the duties and responsibilities of each

15  individual defendant whose acts and omissions are alleged to have caused a constitutional

16  violation. *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988).

17       Here, based on plaintiff's request for damages and assertion that the officers were

18  "errant," the undersigned interprets that plaintiff wishes to impose individual liability upon

19  defendants Ejde and Garrity acting in their personal capacity for actions taken under the color of

20  state law. *See* Dkt. 5, at 5. Accordingly, the Court examines whether plaintiff has alleged that

21  defendants Ejde and Garrity caused or personally participated in causing the harm alleged in the

22  complaint. *Arnold*, 637 F.2d at 1355.

23  ///

24

REPORT AND RECOMMENDATION - 6

1

   B.  *Defendant Ejde*

2          Plaintiff alleges that defendant Ejde retaliated against him in violation of the First

3   Amendment and illegally seized him in violation of the Fourth Amendment. *See* Dkt. 5, at 3.

4          In a First Amendment retaliation claim, a plaintiff must establish that (1) plaintiff

5   engaged in expressive conduct that addressed a matter of public concern, (2) the government

6   officials took an adverse action against the plaintiff, and (3) the expressive conduct was a

7   substantial or motivating factor for the adverse action. *Alpha Energy Savers, Inc. v. Hansen*, 381

8   F.3d 917, 923 (9th Cir. 2004). Specifically, a plaintiff must establish a "causal connection"

9   between the government defendant's "retaliatory animus" and the plaintiff's "subsequent injury."

10  *Nieves v. Bartlett*, 139 S.Ct. 1715, 1722 (2019) (citing *Hartman v. Moore*, 547 U.S. 250, 259

11  (2006)). The motive "must be a 'but-for' cause, meaning that the adverse action against the

12  plaintiff would not have been taken absent the retaliatory motive." *Id*. Further, where the well-

13  pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the

14  complaint has alleged—but it has not "show[n]"—"that the pleader is entitled to relief." *Ashcroft*

15  *v. Iqbal*, 556 U.S. 662, 679 (2009) (citing Fed. Rule Civ. P. 8(a)(2)).

16         Plaintiff appears to allege three incidents that form the basis for his retaliation claim. In

17  his amended proposed complaint, plaintiff alleges an initial, negative interaction with defendant

18  Ejde on November 23, subsequent attempts to register complaints against defendant Ejde with

19  his supervisors, and subsequent damage to plaintiff's personal property. *See* Dkt. 5. Plaintiff's

20  allegations amount to at best, speculation that defendant Ejde retaliated against him after he tried

21  to lodge a complaint and initiate an investigation with the Bremerton Police Department

22  regarding defendant Ejde's alleged illegal seizure. Dkt. 5, at 11. Although plaintiff claims that he

23  "suspected" that defendant Ejde vandalized his car (Dkt. 5, at 11), he fails to provide any facts

24

1    that support personal participation, or a "causal connection" between defendant Ejde's

2    "retaliatory animus" and the plaintiff's "subsequent injury." *Nieves*, 139 S. Ct. at 1722. This is

3    insufficient. *See Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011) (holding that the factual

4    allegations that are taken as true must plausibly suggest an entitlement to relief). For that reason,

5    plaintiff's amended proposed complaint fails to state a viable First Amendment retaliation claim.

6          However, at this stage in the litigation, the undersigned finds that plaintiff has adequately

7    alleged a Fourth Amendment violation against defendant Ejde in his personal capacity when

8    defendant Ejde allegedly detained him under false pretenses for over 40 minutes. *See* Dkt. 5, at 8.

9    *See Borunda v. Richmond*, 885 F.2d 1384, 1391 (9th Cir. 1988) ("[A]n arrest without probable

10   cause violates the Fourth Amendment and gives rise to a claim for damages under § 1983");

11   *Rosenbaum v. Washoe County*, 663 F.3d 1071, 1076 (9th Cir. 2011) ("An officer has probable

12   cause to make a warrantless arrest when the facts and circumstances within his knowledge are

13   sufficient for a reasonably prudent person to believe that the suspect has committed a crime")

14   (citing *Crowe v. County of San Diego,* 608 F.3d 406, 432 (9th Cir. 2010)); *see also Thomas v.*

15   *Dillard*, 818 F.3d 864 (9th Cir. 2016) (§ 1983 claim premised on lack of reasonable suspicion for

16   *Terry* stop).

17                   *C.  Defendant Garrity*

18         Plaintiff also names defendant Garrity, allegedly Ejde's supervisor, as a defendant in his

19   complaint. Dkt. 5, at 2. It is unclear whether plaintiff wishes to hold defendant Garrity liable for

20   violations of plaintiff's First and Fourth Amendment rights, or if he is bringing only a First

21   Amendment claim against defendant Garrity for allegedly interfering with his girlfriend's video

22   recording of plaintiff's interaction with officers on November 23. *See* Dkt. 5, at 10.

23

24

First, plaintiff does not have standing to bring allegations against defendant Garrity for allegedly interfering with plaintiff's girlfriend's First Amendment rights. *See Warth v. Seldin*, 422 U.S. 490, 498 (1975) (Article III standing "is the threshold question in every federal case, determining the power of the court to entertain the suit.")

Further, a defendant cannot be held liable under § 1983 solely on the basis of supervisory responsibility or position. *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 694 n.58 (1978). A § 1983 claim cannot be based on vicarious liability alone but must allege that defendant's own conduct violated plaintiff's civil rights. *City of Canton v. Harris*, 489 U.S. 378, 385–90 (1989). At a minimum, a § 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct at issue. *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984). "'The requisite causal connection can be established . . . by setting in motion a series of acts by others or by knowingly refus[ing] to terminate a series of acts by others, which [the supervisor] knew or reasonably should have known would cause others to inflict a constitutional injury.'" *Rodriguez v. County of Los Angeles*, 891 F.3d 776, 798 (9th Cir. 2018).

Plaintiff alleges that defendant Garrity was present at some point during the November 23 incident, but plaintiff does not assert when defendant Garrity arrived, or how defendant Garrity's own conduct violated plaintiff's civil rights. Dkt. 5, at 10. Plaintiff alleges that well after plaintiff's interaction with defendant Ejde was underway, defendant Garrity "interfered with the video recording that my girlfriend was doing." *See* Dkt. 5, at 10. Then, plaintiff told defendant Garrity that he "believed [O]fficer Ejde was on drugs because his behavior was erratic and unreasonable and his pupils were very large compared to everyone else[']s." Dkt. 5, at 10. He then claims that defendant Ejde "did not return defendant Garrity's gaze." Dkt. 5, at 10.

1    Plaintiff alleges that when he called 911 to complain about the officers, it was defendant Garrity

2    who returned his call—despite plaintiff's request to speak to another officer—at which point

3    Garrity told him that "he didn't think I [plaintiff] had a worthy complaint." Dkt. 5, at 10–11.

4        Plaintiff asserts that he believes there were "illegal police plans against me," based on

5    damage to his car, which he connects to two previous failed attempts to register complaints with

6    the police department—all stemming from the November 23 incident. Dkt. 5, at 11. However,

7    despite this conclusory accusation, plaintiff fails to explain or allege how any particular act by

8    defendant Garrity caused his alleged constitutional deprivations. Thus, plaintiff fails to state a

9    claim upon which relief may be granted because he fails to allege facts that show how defendant

10    Garrity caused—or personally participated in causing—the harm alleged in the complaint for

11    each of the claims with which he wishes to proceed. *Leer*, at 844 F.2d at 633.

12        *D. Municipal Liability*

13        Plaintiff names Kitsap County and the Bremerton Police Department as defendants in his

14    proposed amended complaint. Dkt. 5, at 2–3.

15        In order to set forth a claim against a municipality—such as a county—under § 1983, a

16    plaintiff must show that the municipalities' employees or agents acted through an official

17    custom, pattern, or policy that permits deliberate indifference to, or violates, plaintiff's civil

18    rights. *See Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 690–91 (1978). To

19    establish municipal liability under § 1983, a plaintiff must show (1) deprivation of a

20    constitutional right; (2) that the municipality has a policy; (3) the policy amounts to deliberate

21    indifference to plaintiff's constitutional rights; and (4) the policy is the moving force behind the

22    constitutional violation. *See Oviatt v. Pearce*, 954 F.2d 1470, 1474 (9th Cir. 1992).

23

24

The Supreme Court has emphasized that the unconstitutional acts of a government agent cannot, standing alone, lead to municipal liability; there is no vicarious liability under § 1983. *See Monell*, 436 U.S. at 692–94 (holding that a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents); *Iqbal*, 556 U.S. at 676. The "policy or custom" requirement applies irrespective of whether the remedy sought is money damages or prospective relief. *L.A. Cty. v. Humphries*, 562 U.S. 29, 34 (2010).

### 1. Kitsap County

Plaintiff's claim against Kitsap County is deficient because plaintiff fails to "demonstrate that the alleged constitutional deprivation was the product of a policy or custom of the local governmental unit." *Kirkpatrick v. Cty. of Washoe*, 843 F.3d 784, 793 (9th Cir. 2016) (en banc). Instead, plaintiff's only mention of Kitsap County is in reference to a deputy who allegedly "originally declined to take my [plaintiff's] complaint, but then . . . called me back and left a message saying he would." Dkt. 5, at 12. However, plaintiff then states that he declined to return the deputy's message (Dkt. 5, at 12), so plaintiff was clearly not injured by the deputy's conduct. Thus, plaintiff's claim against Kitsap County fails to state a claim upon which relief can be granted because it fails to allege facts that show a policy or custom that was the moving force behind the constitutional violation. *City of Canton*, 489 U.S. at 389.

### 2. Bremerton Police Department

The Bremerton Police Department is not an appropriate defendant under a theory of municipal liability because the proper defendant in such a claim is the municipality—the city or county—and not the municipal department. *See Vance v. Cty. of Santa Clara*, 928 F. Supp. 993, 996 (N.D. Cal. 1996); *accord Osborne v. Clark Cty. Sheriff's Office*, 3:16-CV-05307-BHS-DWC, 2017 WL 6558665, at *5 (W.D. Wash. Nov. 29, 2017) (Clark County Jail is not an

1  appropriate defendant in a § 1983 action). Thus, plaintiff's § 1983 claims against the Bremerton

2  Police Department should be dismissed.

3  **IV.  Non-Section 1983 Claims**

4  The Court next examines whether plaintiff's proposed amended complaint adequately

5  states any non-section 1983 claims upon which relief can be granted.

6  *A.  Americans with Disabilities Act and Rehabilitation Act*

7  Plaintiff alleges ADA and RA violations. Dkt. 5, at 3.

8  To establish a claim of disability discrimination in violation of the ADA, plaintiff

9  generally must show that (1) he is a "qualified individual with a disability"; (2) he was either

10  excluded from participation in or denied the benefits of a public entity's services, programs, or

11  activities, or was otherwise discriminated against by the public entity; and (3) such exclusion,

12  denial of benefits, or discrimination was by reason of his disability. *Duvall v. County of Kitsap*,

13  260 F.3d 1124, 1135 (9th Cir. 2001), *as amended on denial of reh'g* (Oct. 11, 2001); 42 U.S.C. §

14  12132. Similarly, a plaintiff bringing suit under a provision of the RA barring disability

15  discrimination by programs receiving federal financial assistance must show that (1) he is an

16  individual with a disability; (2) he is otherwise qualified to receive the benefit; (3) he was denied

17  the benefits of the program solely by reason of his disability; and (4) the program receives

18  federal financial assistance. *Duvall*, 260 F.3d at 1135.

19  The Ninth Circuit has explained that the broad language of Title II brings within its scope

20  "anything a public entity does." *See Cohen v. City of Culver City*, 754 F.3d 690, 695 (9th Cir.

21  2014) (citing *Lee v. City of Los Angeles*, 250 F.3d 668, 691 (9th Cir. 2001)). Courts have

22  recognized at least two types of Title II claims applicable to arrests: "(1) wrongful arrest, where

23  police wrongly arrest someone with a disability because they misperceive the effects of that

24

disability as criminal activity; and (2) reasonable accommodation, where, although police properly investigate and arrest a person with a disability for a crime unrelated to that disability, they fail to reasonably accommodate the person's disability in the course of investigation or arrest, causing the person to suffer greater injury or indignity in that process than other arrestees." *Sheehan v. City & Cty. of S.F.*, 743 F.3d 1211, 1232 (9th Cir. 2014) (citing *Waller ex rel. Est. of Hunt v. Danville, VA*, 556 F.3d 171, 174 (4th Cir. 2009); *Gohier v. Enright,* 186 F.3d 1216, 1220–21 (10th Cir. 1999)), *rev'd in part on other grounds, sub nom. City & Cty. of S.F. v. Sheehan*, 135 S. Ct. 1765 (2015).  In a Title II claim grounded in a public entity's alleged failure to provide a reasonable accommodation under 28 C.F.R. § 35.130(b)(7), the plaintiff bears the initial burden of alleging the existence of a reasonable accommodation.  *See Pierce v. Cty. of Orange*, 526 F.3d 1190, 1217 (9th Cir. 2008).

"A potential defendant under the statute is any 'public entity' which includes, among others, 'any State or local government'; and 'any department, agency, special purpose district, or other instrumentality of a State or States or local government.'" *Becker v. Oregon*, 170 F. Supp. 2d 1061, 1066 (D. Or. 2001) (quoting 42 U.S.C. § 12131)). "Although individual defendants may not be sued in their individual capacities under Title II of the ADA, they may be sued in their official capacities because suing an individual in his official capacity is treated the same as suing the entity itself." *Id*.

Here, plaintiff alleges that he has a prosthetic hip, scoliosis, and anxiety. Dkt. 5, at 8. While he does not specify which claim he wishes to bring under the ADA, the Court interprets his allegations to claim that during his lengthy investigation, defendant Ejde failed to provide reasonable accommodation for plaintiff's disability when he grabbed him by the arm and led him

1    away to speak privately. Dkt. 5, at 7–9. Plaintiff alleges that although he "did walk willingly," he

2    was "hurt" and "struggled to keep up" with the officer. Dkt. 5, at 9.

3        As far as plaintiff's ADA claim against defendant Ejde in his official capacity, plaintiff

4    has not shown that he was denied a reasonable accommodation. Rather, while he asserts that he

5    "struggled" to keep up with the officer, he admits that he went "willingly." Dkt. 5, at 9. He

6    appears to allege that they stopped walking when he could not step onto a curb. *See* Dkt. 5, at 9.

7    Plaintiff fails to explain what defendant Ejde did to deny him reasonable accommodations or

8    otherwise discriminate against him on the basis of his disability. Therefore, plaintiff has not pled

9    facts sufficient for a prima facie case under the ADA. *Sheehan*, 743 F.3d at 1232.

10       Regarding plaintiff's claims under the RA, plaintiff does not allege facts to show that the

11   any particular defendant receives federal financial assistance as required under prong four of the

12   RA. Therefore, all of plaintiff's claims under the RA fail because he failed to plead an essential

13   element of that claim. *See Ivey*, 673 F.2d at 268.

14               *B.   Title VI of the Civil Rights Act of 1964*

15       Plaintiff alleges violations of Title VI of the Civil Rights Act of 1964 (42 U.S.C. §

16   2000d), which prohibits exclusion from participation in, denial of benefits of, and discrimination

17   under federally assisted programs because of a person's race, color, or national origin. To

18   establish a claim for discrimination under Title VI, a plaintiff "must show that actions of the

19   defendants had a discriminatory impact, and that defendants acted with an intent or purpose to

20   discriminate based upon plaintiff's membership in a protected class." *Darensburg v. Metro.*

21   *Transp. Comm'n*, 636 F.3d 511, 522 (9th Cir. 2011) (internal quotation omitted).

22       Here, plaintiff does not mention his race, color, or national origin at any point in the

23   amended proposed complaint. Additionally, plaintiff does not allege facts that show defendants'

24

REPORT AND RECOMMENDATION - 14

1   actions had a discriminatory impact or that defendants acted with an intent or purpose to

2   discriminate based upon plaintiff's membership in a protected class. *See Darensburg*, 636 F.3d at

3   522. Therefore, plaintiff fails to state a claim upon which relief can be granted under Title VI of

4   the Civil Rights Act. *Ivey*, 673 F.2d at 268.

5                  *C.  Omnibus Crime Control and Safe Streets Act of 1968*

6           Plaintiff alleges violations of § 10228 of Title 34 of the U.S. Code, or the Omnibus Crime

7   Control and Safe Streets Act of 1968, which prohibits discrimination by state and local criminal

8   justice agencies that receive funding under the Act. The statute states,

9           No person in any State shall on the ground of race, color, religion, national origin,
            or sex be excluded from participation in, be denied the benefits of, or be subjected
10          to discrimination under or denied employment in connection with any programs or
            activity funded in whole or in part with funds made available under this chapter.

11
    34 U.S.C. § 10228(c)(1) (2018).
12

13          Again, based on the facts alleged in the complaint, plaintiff is claiming that he was

14  discriminated against because of his alleged disability. These allegations fail to state a claim for

15  which relief may be granted under this statute because plaintiff did not plead either that he is a

16  member of a protected class or that the department received any federal funds under the Act.

17                 *D.  Violent Crime Control and Law Enforcement Act of 1994*

18          Plaintiff alleges violation of the Violent Crime Control and Law Enforcement Act of

19  1994, 34 U.S.C. § 12601. Dkt. 5, at 3. However, section 12601(b) authorizes only the Attorney

20  General to bring a civil action under the statute to "obtain appropriate equitable and declaratory

21  relief to eliminate the pattern or practice." 34 U.S.C. § 12601(b) (2018). Thus, there is no private

22  right of action under the statute, and therefore, plaintiff has made no claim for which relief may

23  be granted under 34 U.S.C. § 12601.

24

1    *E. 18 U.S.C. §§ 241 and 242*

2    Plaintiff claims relief under 18 U.S.C. §§ 241 and 242. Dkt. 5, at 3. However, it is well-

3    established that these criminal provisions provide no basis for civil liability. *Agnew v. City of*

4    *Compton*, 239 F.2d 226, 230 (9th Cir. 1956), *overruled on other grounds*; *Cohen v. Norris*, 300

5    F.2d 24, 29–30 (9th Cir. 1962). Thus, plaintiff fails to state a claim for which relief may be

6    granted under 18 U.S.C. §§ 241 and 242.

7    **CONCLUSION**

8    Because plaintiff qualifies for *in forma pauperis* status, the Court recommends that his

9    IFP application (Dkt. 1) be granted. However, due to the deficiencies described above, the Court

10   recommends that all of plaintiff's claims other than the individual capacity Fourth Amendment

11   claim against defendant D. Ejde be dismissed without prejudice.

12   Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil

13   Procedure, the parties shall have fourteen (14) days from service of this Report to file written

14   objections. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those

15   objections for purposes of appeal. *Thomas v Arn*, 474 U.S. 140 (1985). Accommodating the time

16   limit imposed by Rule 72(b), the Clerk is directed to set the matter for consideration on August

17   30, 2019, as noted in the caption.

18   Dated this 14th day of August, 2019.

19

20   J. Richard Creatura
21   United States Magistrate Judge

22

23

24